FILED
2013 Jan-17  AM 11:12
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# NORTHWESTERN DIVISION

|  |  |  |
|---|---|---|
| MITCHELL-HOLLINGSWORTH NURSING & REHABILITATION, CENTER, LLC, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Civil Action No. CV-12-S-3558-NW |
| BLUE CROSS AND BLUE SHIELD OF MICHIGAN and BLUE CROSS AND BLUE SHIELD OF ALABAMA, | ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

This case is before the court on the motion to remand to state court filed by plaintiff, Mitchell-Hollingsworth Nursing & Rehabilitation Center ("Mitchell-Hollingsworth" or "plaintiff");[1] the motion to dismiss the non-ERISA claims in plaintiff's original complaint filed by defendant Blue Cross-Blue Shield of Michigan ("BCBS-Michigan");[2] and the motion to dismiss the non-ERISA claims in plaintiff's amended complaint, also filed by BCBS-Michigan.[3]  Upon consideration of these motions, the pleadings, and the parties' briefs, the court concludes that the motion to

---

[1] Doc. no. 7.

[2] Doc. no. 5.

[3] Doc. no. 17.

remand should be granted, and this case should be remanded to state court.  The motions to dismiss will be denied.

## I. STANDARD OF REVIEW

Federal district courts are tribunals of limited jurisdiction, "'empowered to hear only those cases within the judicial power of the United States as defined by Article III of the Constitution,' and which have been entrusted to them by a jurisdictional grant authorized by Congress." *University of South Alabama v. The American Tobacco Co.*, 168 F.3d 405, 409 (11th Cir. 1999) (quoting *Taylor v. Appleton*, 30 F.3d 1365, 1367 (11th Cir. 1994)).  Accordingly, an "Article III court must be sure of its own jurisdiction before getting to the merits" of any action.  *Ortiz v. Fiberboard Corp.*, 527 U.S. 815, 831 (1999) (citing *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 88-89 (1998)).  A removing defendant bears the burden of proving that federal jurisdiction exists.  *See, e.g.*, *Leonard v. Enterprise Rent A Car*, 279 F.3d 967, 972 (11th Cir. 2002); *Williams v. Best Buy Co.*, 269 F.3d 1316, 1319-20 (11th Cir. 2001)); *Kirkland v. Midland Mortgage Co.*, 243 F.3d 1277, 1281 n.5 (11th Cir. 2001) ("[T]he burden is on the party who sought removal to demonstrate that federal jurisdiction exists.") (citing *Tapscott v. MS Dealer Service Corp.,* 77 F.3d 1353, 1356 (11th Cir. 1996), *overruled on other grounds by Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000)).  Accordingly, removal statutes

must be construed narrowly, and "all uncertainties as to removal jurisdiction are to be resolved in favor of remand." *Russell Corp. v. American Home Assurance Co.,* 264 F.3d 1040, 1050 (11th Cir. 2001) (citing *Burns v. Windsor Insurance Co.,* 31 F.3d 1092, 1095 (11th Cir. 1994)). Further, the court must focus upon jurisdictional facts alleged *on the date the case was removed from state court. See, e.g., Burns*, 31 F.3d at 1097 n.13 ("Jurisdictional facts are assessed on the basis of plaintiff's complaint *as of the time of removal*.") (emphasis in original) (citations omitted); *see also*, *e.g.*, *Leonard*, 279 F.3d at 972 (same).

## II. PROCEDURAL HISTORY

Plaintiff, Mitchell-Hollingsworth Nursing & Rehabilitation Center, LLC ("Mitchell-Hollingsworth" or "plaintiff") originally filed this case in the Circuit Court of Lauderdale County, Alabama, on June 21, 2012, against defendants Blue Cross and Blue Shield of Michigan ("BCBS-Michigan") and Blue Cross and Blue Shield of Alabama ("BCBS-Alabama").[4]  Plaintiff's complaint contained state law claims for breach of express contract, breach of implied contract, negligence/wantonness, fraud/misrepresentation/suppression of material facts, promissory fraud, equitable/promissory estoppel, *quantum meruit*, unjust enrichment, conspiracy, and conversion — all based upon BCBS-Michigan's alleged denial of coverage for health

---

[4] *See* Complaint, appended to Notice of Removal (doc. no. 1).  Plaintiff also named eight fictitious defendants.  *See id.*

care services plaintiff provided to a beneficiary under a health benefits plan administered by BCBS-Michigan.  BCBS-Alabama removed the case to this court on October 9, 2012, asserting federal jurisdiction under 28 U.S.C. § 1331 on the basis that plaintiff's state law claims are completely pre-empted by the comprehensive statutory scheme of the Employee Retirement Income Security of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*[5]  BCBS-Michigan joined in the Notice of Removal.[6]  BCBS-Michigan also filed a motion to dismiss all non-ERISA claims in plaintiff's complaint on October 16, 2012.[7]  Plaintiff filed an amended complaint on November 2, 2012,[8] and BCBS-Michigan filed a motion to dismiss all non-ERISA claims asserted in the amended complaint on November 16, 2012.[9]

### III. ALLEGATIONS OF PLAINTIFF'S COMPLAINT

The following allegations are taken from plaintiff's original complaint, filed in the Circuit Court of Lauderdale County, Alabama, on June 21, 2012.  The allegations of plaintiff's *amended* complaint are irrelevant to the determination of whether the removal was proper.  As discussed above, in the removal and remand context, all jurisdictional facts are assessed as of the date of removal, and subsequent

---

[5] Doc. no. 1 (Notice of Removal).

[6] *Id.* ¶ 6.

[7] Doc. no. 5.

[8] Doc. no. 13.

[9] Doc. no. 17.

events, including the filing of an amended complaint, do not alter the jurisdictional analysis.  *See, e.g., Burns*, 31 F.3d at 1097 n.13

Mitchell-Hollingsworth is a skilled nursing facility located in Florence, Alabama.[10]  BCBS-Michigan allegedly provided insurance coverage to an individual named Jean Beauchamp, who became a resident at the Mitchell-Hollingsworth facility in 2007.[11]  On or about June 4, 2007, Mitchell-Hollingsworth allegedly placed a telephone call to BCBS-Michigan prior to admitting Ms. Beauchamp in order to inquire about the limits of the coverage available to her.[12]  During that telephone call, BCBS-Michigan allegedly informed Mitchell-Hollingsworth that Ms. Beauchamp was covered for 730 days of skilled nursing care, and it did not mention any limitation that might reduce the amount of skilled nursing coverage available to her.[13]  BCBS-Michigan allegedly made the same representation to Mitchell-Hollingsworth after a second inquiry on October 16, 2008.[14]

Allegedly in reliance on the information it received from BCBS-Michigan, Mitchell-Hollingsworth admitted Ms. Beauchamp as a patient on June 5, 2007, and it treated her until her death on September 27, 2009.  Ms. Beauchamp received a total

---

[10] Complaint ¶ 8.

[11] *Id.* ¶¶ 9-10.

[12] *Id.* ¶ 11.

[13] *Id.* ¶ 12.

[14] *Id.* ¶ 13.

of 774 days of skilled nursing care at Mitchell-Hollingsworth,[15] and Mitchell-Hollingsworth received a total of $539,200 in compensation from BCBS-Michigan.[16]

On June 21, 2010, Mitchell-Hollingsworth allegedly received written correspondence from BCBS-Alabama, purportedly on behalf of BCBS-Michigan, stating that BCBS-Alabama would being recouping payments BCBS-Michigan had made for Ms. Beauchamp's care, because some of those payments were made for non-covered services.[17]  BCBS-Alabama allegedly began recouping a total of $145,600 from Mitchell-Hollingsworth on or about October 22, 2010, for amounts paid to Mitchell-Hollingsworth for 182 days of skilled nursing care that BCBS-Michigan claimed were not covered by Ms. Beauchamp's insurance plan.[18]  Mitchell-Hollingsworth allegedly began contacting the customer service departments of both BCBS-Michigan and BCBS-Alabama to inquire about the recoupment.  Both customer service departments described the terms of Ms. Beauchamp's coverage as being materially different than those described when Mitchell-Hollingsworth made its pre-admission inquires into Ms. Beauchamp's coverage.[19]

Mitchell-Hollingsworth allegedly filed internal appeals with both BCBS-

---

[15] Complaint ¶ 14.

[16] *Id.* ¶ 15.

[17] *Id.* ¶ 16.

[18] *Id.* ¶ 17.

[19] *Id.* ¶¶ 18-22.

Michigan and BCBS-Alabama in October and November of 2010, disputing the recoupment and requesting an audit of all claims related to the care of Ms. Beauchamp.[20]  On April 28, 2011, Mitchell-Hollingsworth also allegedly submitted a letter, through counsel, to BCBS-Alabama, describing the situation and requesting review of all records associated with the representations allegedly made by BCBS-Michigan.[21]  BCBS-Michigan denied Mitchell-Hollingsworth's appeal on June 6, 2011.[22]  In summary, Mitchell-Hollingsworth alleges that it

> admitted and treated Jean Beauchamp based upon BCBSMI's repeated representations that she was covered for 730 days of skilled nursing care.  Later, after that care had been provided and without informing Mitchell-Hollingsworth, BCBSMI ordered BCBSAL to recoup $145,600 in alleged overpayments for the care Mitchell-Hollingsworth had already provided to Jean Beauchamp.  In spite of Mitchell-Hollingsworth's correspondence and appeals, BCBSAL complied with BCBSMI's direction and withheld $145,600 from Mitchell-Hollingsworth.[23]

Mitchell-Hollingsworth asserted ten state law causes of action in its original complaint.  To support its claim for breach of express contract, Mitchell-Hollingsworth states:

> 29.   BCBSAL entered into contracts with Mitchell-Hollingsworth to compensate Mitchell-Hollingsworth for covered

---

[20] Complaint ¶ 23-24.

[21] *Id.* ¶ 25.

[22] *Id.* ¶ 26.

[23] *Id.* ¶ 27.

services Mitchell-Hollingsworth rendered to BCBSAL's insureds.

> 30.    In accordance with these contracts, Mitchell-Hollingsworth provided care to BCBSAL's insureds and expected compensation from BCBSAL in return.

> 31.    BCBSAL breached its agreement with Mitchell-Hollingsworth by withholding funds from Mitchell-Hollingsworth it was obligated to pay under the contracts to compensate Mitchell-Hollingsworth for the provis

> 32.    Mitchell-Hollingsworth was injured as a proximate result of the breach of the agreements by BCBSAL.[24]

To support its claim for breach of implied contract, Mitchell-Hollingsworth asserts that it entered into an implied contract with BCBS-Michigan to compensate Mitchell-Hollingsworth for covered services it rendered to Ms. Beauchamp; that it provided care to Ms. Beauchamp in reliance on the terms of that contract; that BCBS-Michigan breached the implied contract by failing to compensate Mitchell-Hollingsworth for the provision of care to Ms. Beauchamp; and that it was injured as a proximate result of BCBS-Michigan's breach of the contract.[25]

To support its claim for negligence and/or wantonness, Mitchell-Hollingsworth asserts that both defendants owed it a duty to provide accurate information regarding benefits and payments, a duty to pay for services rendered to defendants' insureds, and a duty to refrain from improperly withholding or recouping payments, but that

---

[24] *Id.* ¶¶ 29-32.
[25] Complaint ¶¶ 34-37.

defendants negligently, recklessly, wantonly, and intentionally breached those duties, resulting in damages to Mitchell-Hollingsworth.[26]

To support its claim for fraud, misrepresentation, and/or suppression, Mitchell-Hollingsworth alleges that both defendants knowingly, intentionally, and/or recklessly "misrepresented material facts and suppressed material information from Mitchell-Hollingsworth to induce Mitchell-Hollingsworth to act or refrain from acting."[27]   Plaintiff also alleges that both defendants intentionally suppressed information from it, despite being under a duty to disclose that information.[28]  Finally, plaintiff alleges that it relied upon defendants' misrepresentations and suppressions to its detriment, and it suffered damages as a proximate result.[29]

To support its claim for promissory fraud, Mitchell-Hollingsworth alleges that BCBS-Michigan "intentionally, willfully, wantonly, recklessly and/or negligently misrepresented material facts to and suppressed information from Mitchell-Hollingsworth" in an effort to induce Mitchell-Hollingsworth to treat Ms. Beauchamp.[30]  In reliance upon those misrepresentations and suppressions, Mitchell-Hollingsworth expended time, money, and other resources caring for Ms.

---

[26] *Id.* ¶¶ 39-40.

[27] *Id.* ¶¶ 42-43, 45.

[28] *Id.* ¶ 44.

[29] *Id.* ¶¶ 46-47.

[30] Complaint ¶ 49.

Beauchamp.[31]

To support its claim for equitable or promissory estoppel, Mitchell-Hollingsworth alleges that it relied upon promises made by representatives of BCBS-Michigan, and that "[p]reventing injustice and fraud can only be accomplished by estopping BCBSMI from now repudiating the promises and representations it made to Mitchell-Hollingsworth . . . ."[32]

To support its claim for *quantum meruit,* Mitchell-Hollingsworth alleges that "[d]efendants are liable to Mitchell-Hollingsworth for the valuable services performed by Mitchell-Hollingsworth which were rendered to and accepted by Defendants' insured on behalf of Defendants."[33]

To support its claim for unjust enrichment, Mitchell-Hollingsworth alleges that both defendants have "knowingly accepted, obtained and withheld money from Mitchell-Hollingsworth when Mitchell-Hollingsworth reasonably expected compensation."[34]  Therefore, defendants were "enriched in an unjust manner and equity and good conscience mandate that Defendants not be allowed to retain their improper gains and benefits."[35]  Stated differently, defendants "should be required to

---

[31] *Id.* ¶ 51.

[32] *Id.* ¶¶ 54-55 (alterations supplied).

[33] *Id.* ¶ 57 (alteration supplied).

[34] *Id.* ¶ 59.

[35] Complaint ¶ 60.

compensate Mitchell-Hollingsworth the amounts by which they have been unjustly enriched."[36]

For its conspiracy claim, Mitchell-Hollingsworth alleges that both defendants "conspired to commit the unlawful and fraudulent conduct alleged herein by the acts and/or omission in the manner described above and otherwise conspired and combined for the sole purpose of causing harm to Mitchell-Hollingsworth," and that it did indeed suffer damages as a proximate result of defendants' alleged conspiracy.[37]

To support its claim for conversion, Mitchell-Hollingsworth states that both defendants "wrongfully took, withheld and interfered with the possession of payments which rightfully belonged to Mitchell-Hollingsworth," resulting in damages.[38]

## IV. DISCUSSION

As plaintiff's motion to remand challenges this court's subject matter jurisdiction, it must be addressed, and subject matter jurisdiction must be established, before the court can rule on the motions to dismiss.

Defendants' removal of the case to this court was based upon the alleged complete pre-emption of all of plaintiff's state law claims by ERISA.

Ordinarily, determining whether a particular case arises under

---

[36] *Id.* ¶ 61.

[37] *Id.* ¶ 63-64.

[38] *Id.* ¶ 66-67.

federal law turns on the "'well-pleaded complaint'" rule. *Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Trust for Southern Cal.*, 463 U.S. 1, 9–10, 103 S. Ct. 2841, 77 L. Ed. 2d 420 (1983). The Court has explained that

> "whether a case is one arising under the Constitution or a law or treaty of the United States, in the sense of the jurisdictional statute[,] . . . must be determined from what necessarily appears in the plaintiff's statement of his own claim in the bill or declaration, unaided by anything alleged in anticipation of avoidance of defenses which it is thought the defendant may interpose." *Taylor v. Anderson*, 234 U.S. 74, 75–76, 34 S. Ct. 724, 58 L. Ed. 1218 (1914).

> In particular, the existence of a federal defense normally does not create statutory "arising under" jurisdiction, *Louisville & Nashville R. Co. v. Mottley*, 211 U.S. 149, 29 S. Ct. 42, 53 L. Ed. 126 (1908), and "a defendant may not [generally] remove a case to federal court unless the plaintiff's complaint establishes that the case 'arises under' federal law," *Franchise Tax Bd., supra*, at 10, 103 S. Ct. 2841. There is an exception, however, to the well-pleaded complaint rule. "[W]hen a federal statute wholly displaces the state-law cause of action through complete pre-emption," the state claim can be removed. *Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 8, 123 S. Ct. 2058, 156 L. Ed. 2d 1 (2003). This is so because "[w]hen the federal statute completely pre-empts the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law." *Ibid*. ERISA is one of these statutes.

*Aetna Health Inc. v. Davila*, 542 U.S. 200, 207-08 (2004) (alterations in original).

In *Davila,* the Supreme Court provided the following guidance about how to determine whether a state law claim is pre-empted by ERISA:

ERISA § 502(a)(1)(B) provides:

> "A civil action may be brought — (1) by a participant or beneficiary — . . . (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).
>
> This provision is relatively straightforward.  If a participant or beneficiary believes that benefits promised to him under the terms of the plan are not provided, he can bring suit seeking provision of those benefits.  A participant or beneficiary can also bring suit generically to "enforce his rights" under the plan, or to clarify any of his rights to future benefits.  Any dispute over the precise terms of the plan is resolved by a court under a *de novo* review standard, unless the terms of the plan "giv[e] the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S. Ct. 948, 103 L. Ed. 2d 80 (1989).
>
> It follows that if an individual brings suit complaining of a denial of coverage for medical care, where the individual is entitled to such coverage only because of the terms of an ERISA-regulated employee benefit plan, and where no legal duty (state or federal) independent of ERISA or the plan terms is violated, then the suit falls "within the scope of" ERISA § 502(a)(1)(B). *Metropolitan Life*[ *Insurance Co. v. Taylor*, 481 U.S. 58, 66 (1987)].  In other words, if an individual, at some point in time, could have brought his claim under ERISA § 502(a)(1)(B), and where there is no other independent legal duty that is implicated by a defendant's actions, then the individual's cause of action is completely pre-empted by ERISA § 502(a)(1)(B).

*Davila,* 542 U.S. at 210 (alterations and emphasis in original).

The Eleventh Circuit has characterized *Davila* as establishing a two-part test:

*i.e.,* "(1) whether the plaintiff could have brought its claim under § 502(a); and (2)

-13-

whether no other legal duty supports the plaintiff's claim." *Connecticut State Dental Ass'n v. Anthem Health Plans, Inc.,* 591 F.3d 1337, 1345 (11th Cir. 2009) (citing *Davila,* 542 U.S. at 210).  The first "part of the test is satisfied if two requirements are met:  (1) the plaintiff's claim must fall within the scope of ERISA; and (2) the plaintiff must have standing to sue under ERISA." *Connecticut State Dental Ass'n,* 591 F.3d at 1350 (citing *Davila,* 542 U.S. at 211-12).  The court should "first consider whether the claims are within the scope of § 502(a)(1)(B), because if they are not, standing to assert them is irrelevant."  *Id.*

It also must be noted that

> healthcare provider claims are usually not subject to complete preemption because "[h]ealthcare providers . . . generally are not considered 'beneficiaries' or 'participants' under ERISA." *Hobbs v. Blue Cross Blue Shield of Ala.*, 276 F.3d 1236, 1241 (11th Cir. 2001) (citing *Cagle v. Bruner*, 112 F.3d 1510, 1514 (11th Cir. 1997)); *see also Pascack Valley Hosp.*[*, Inc. v. Local 464A UFCW Welfare Reimbursement Plan,*] 388 F.3d [393,] 400 [(3rd Cir. 2004)] ("We conclude that the Hospital could not have brought its claims under § 502(a) because the Hospital does not have standing to sue under that statute."); *In re Managed Care Litig.*, 298 F. Supp. 2d 1259 (S.D. Fla. 2003) (noting that only two categories of individuals — participants and beneficiaries — are authorized to sue for benefits under § 502(a)(1)(B)). Moreover, such claims often are not the type of claims that could be brought under § 502(a) because they do not "duplicate[ ], supplement [ ], or supplant[ ] the ERISA civil enforcement remedy." *Davila*, 542 U.S. at 209, 124 S. Ct. at 2495.  For example, *a healthcare provider's claims of negligent misrepresentation and estoppel based on a plan's oral misrepresentations are not ERISA claims because they do not arise from the plan or its terms.  Franciscan Skemp*[ *Healthcare, Inc. v. Central*

> *States Joint Board Health and Welfare Trust Fund*], 538 F.3d [594,]
> 597[ (7th Cir. 2008)].

*Connecticut State Dental Ass'n,* 591 F.3d at 1346-47 (alterations in original,

emphasis supplied, footnotes omitted).  In the *Connecticut State Dental Ass'n* case,

the Eleventh Circuit

> discussed two types of claims that can be made by providers against
> insurers:  those challenging the "rate of payment" pursuant to the
> provider-insurer agreement, and those challenging the "right to
> payment" under the terms of an ERISA beneficiary's plan. [*Connecticut
> State Dental Ass'n,* 591 F.3d] at 1349-50; *see also Lone Star OB/GYN
> Assocs. v. Aetna Health, Inc.*, 579 F.3d 525, 530 (5th Cir. 2009);
> *Pascack Valley Hosp., Inc. v. Local 464A UFCW Welfare
> Reimbursement Plan*, 388 F.3d 393, 402-03 (3d Cir. 2004).  We
> indicated that a "rate of payment" challenge does not necessarily
> implicate an ERISA plan, but a challenge to the "right to payment"
> under an ERISA plan does.  *Connecticut State Dental*, 591 F.3d at
> 1350-51.

*Borrero v. United Healthcare of New York,* 610 F.3d 1296, 1302 (11th Cir. 2010)

(alteration supplied).  It must therefore be determined whether plaintiff's claims in

this case are more like a challenge to the "right to payment" claim that falls under the

scope of ERISA, or more like a "rate of payment" challenge that does not.

Plaintiff relies primarily on the Seventh Circuit's decision in *Franciscan Skemp*

*Healthcare, Inc. v. Central States Joint Board Health and Welfare Trust Fund,* 538

F.3d 594 (7th Cir. 2008), to support its argument that its claims fall outside ERISA.

The Seventh Circuit described the relevant facts of that case as follows:

The plaintiff-appellant, Franciscan Skemp Healthcare, Inc. ("Franciscan Skemp"), is a healthcare provider in La Crosse, Wisconsin. The defendant-appellee, Central States Joint Board Health and Welfare Trust Fund ("Central States"), is an employee benefit plan. Sherry Romine, through her employment, was a Central States plan participant. She came to Franciscan Skemp in October 2003 seeking medical treatment. Before providing services, Franciscan Skemp called Central States to verify Central States's coverage of Romine and the relevant services. A Central States representative made oral representations that they were covered. Franciscan Skemp treated Romine. Following unsuccessful efforts to receive payment from Central States, after submitting a claim for benefits, Franciscan Skemp learned that Central States would not pay — it turns out that Romine lost her benefits, effective September 30, 2003, for failing to pay COBRA premiums. When Franciscan Skemp called in October to verify coverage, the Central States representative failed to disclose that Romine's coverage was subject to COBRA and that the coverage could be retroactively canceled.

*Franciscan Skemp*, 538 F.3d at 595-96. Franciscan Skemp sued Central States in a Wisconsin state court, alleging claims of negligent misrepresentation and estoppel under Wisconsin law. *Id.* at 596. Central States removed the case to federal court, on the basis that Franciscan Skemp's state law claims were pre-empted by ERISA, but the Seventh Circuit disagreed and ordered that the case be remanded to the state court. *Id.* at 596, 601.

Despite the fact that Franciscan Skemp had received an assignment of benefits from Romine and filed a claim on her behalf with Central States, the Eleventh Circuit concluded that Franciscan Skemp had asserted the claims contained within its state court complaint on its own right, not as Romine's representative. *Id.* at 597. In other

words, Franciscan Skemp's claims arose "not from the plan or its terms, but from the alleged oral representations made by Central States to Franciscan Skemp." *Id.* In fact, both parties acknowledged that Franciscan Skemp could not have successfully asserted claims as Romine's assignee, because Romine undisputedly was not entitled to coverage due to her failure to pay COBRA premiums. *Franciscan Skemp*, 538 F.3d at 598. "Simply because at one point in time Franciscan Skemp acknowledged an assignment from Romine does not mean that it simultaneously and implicitly gave up any claim(s) it had against Central States apart from that assignment." *Id.*

This court finds the Seventh Circuit's reasoning in *Franciscan Skemp* to be persuasive, and the facts of that case to be materially similar to those of the present case.[39]   This is particularly true with regard to Counts II-X of Mitchell-Hollingsworth's complaint.  Like Franciscan Skemp, Mitchell-Hollingsworth is asserting those claims based upon an independent agreement between it and defendants, or based upon independent activities engaged in by defendants, *not* based upon the original agreement between Ms. Beauchamp and BCBS-Michigan.  The fact that Ms. Beauchamp executed an assignment of benefits in favor of BCBS-Michigan

---

[39] Moreover, the *Franciscan Skemp* decision was cited approvingly by the Eleventh Circuit in *Connecticut State Dental Ass'n* as supporting the proposition that "a healthcare provider's claims of negligent misrepresentation and estoppel based upon a plan's oral misrepresentations are not ERISA claims because they do not arise from the plan or its terms." *Connecticut State Dental Ass'n,* 591 F.3d at 1347 (citing *Franciscan Skemp,* 538 F.3d at 597).

does not alter this court's conclusion.[40]  The mere existence of an assignment does not change the nature of Mitchell-Hollingsworth's claims, which are independent of any ERISA plan.  Deciding Counts II through X of Mitchell-Hollingsworth's complaint will not require the court to construe any ERISA plan terms, or to determine whether Ms. Beauchamp was entitled to coverage under the plan.  Instead, the court will only be called upon to determine whether either defendant misrepresented the extent of Ms. Beauchamp's benefits, or breached an independent agreement with Mitchell-Hollingsworth to provide coverage for Ms. Beauchamp's care.

BCBS-Michigan asserts that the *Franciscan Skemp* decision should not control because that decision "departs from the Eleventh Circuit's *Davila*-based framework."[41]  This court does not agree.  BCBS-Michigan makes much of the *Franciscan Skemp* court's statement that "Franciscan Skemp *could* bring ERISA claims in Romine's shoes as a beneficiary for the denial of benefits under the plan; but it has not."  *Franciscan Skemp*, 538 F.3d at 598 (emphasis in original).  According to BCBS-Michigan, that statement is inconsistent with the Eleventh Circuit's recognition that, in determining whether a health care provider is asserting a claim on behalf of an ERISA beneficiary,  the court ultimately must "ask whether

---

[40] *See* doc. no. 14, Exhibit 1 (Declaration of Karen Gilliland), at Exhibits A & B.

[41] Doc. no. 15 (brief of BCBS-Michigan), at 4.

the [provider] '*could* have brought his claim under ERISA § 502(a)(1)(B).'" *Borrero v. United Healthcare of New York, Inc.,* 610 F.3d 1296, 1303-04 (11th Cir. 2010) (quoting *Davila,* 542 U.S. at 210) (emphasis in *Borrero*).  The implication is, of course, that as long as the provider *could* have brought its claim(s) under ERISA, then ERISA pre-emption applies, regardless of how the plaintiff actually stated its claims. Stated differently, according to BCBS-Michigan,

> a plaintiff does ***not*** have a choice about whether to bring a claim under ERISA Section 502(a)(1)(B).  Rather, if the plaintiff "***could***" bring such a claim, then any state law claim that plaintiff pleads will be "completely preempted" if the second *Borrero* condition is also met — namely, that there is "no other independent legal duty that is implicated by a defendant's actions."[42]

This court does not agree that *Borerro* stands for the proposition that a health care provider who has received an assignment of benefits from an ERISA beneficiary is incapable of asserting a claim against the insurance company administering the health care plan that is independent of the claims the beneficiary might have asserted on her own behalf.  To the contrary, the *Borrero* court emphasized that "'the plaintiff is the master of the complaint.'  . . .  But when the plaintiff chooses to plead a cause of action completely preempted by federal law, the plaintiff is not always master of the forum." *Borrero,* 610 F.3d at 1303 (quoting *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 398-99 (1987)).  The plaintiffs in *Borrero* did not assert "exclusively state

---

[42] Doc. no. 15, at 5 (quoting *Borrero,* 610 F.3d at 1301) (emphasis in original).

law claims, but instead have cast their pleadings in a way that implicates federal law as well." *Borrero,* 610 F.3d at 1303.  It was because the plaintiffs' claims, *as they were pled in the complaint*, were "'substantially dependent upon interpretation' of ERISA plans" that the court asked the question of whether the plaintiffs *could* have brought their claims under ERISA.  *Id.* at 1303-04.

This portion of the *Borrero* decision is consistent with the Seventh Circuit's decision in *Franciscan Skemp*.  Both the Seventh Circuit and the Eleventh Circuit acknowledge that the nature of the claims pled in the plaintiff's complaint controls the ERISA pre-emption analysis, regardless of the existence of an assignment of benefits.    Here,  the  claims  asserted  in  Counts  II  through  X  of  Mitchell-Hollingsworth's complaint do not implicate the terms of Ms. Beauchamp's ERISA plan;  instead,  all  of  those  claims  arise  either  out  of  Mitchell-Hollingsworth's independent agreement with defendants, or out of independent actions taken by defendants.[43]

---

[43] BCBS-Michigan also makes the assertion in a footnote that *Franciscan Skemp* is factually distinguishable because the plaintiff in *Franciscan Skemp* "conceded that its patient was ***not*** entitled to any benefits under the terms of the applicable ERISA plan." Doc. no. 15, at 4 n.1 (emphasis in original).  That is undeniably a factual difference between this case and *Franciscan Skemp*, but the distinction is not material.  The Seventh Circuit did not ground its decision in Romine's ineligibility for benefits under the plan.  While that fact likely added clarity to the Seventh Circuit's decision making process, the central point of the *Franciscan Skemp* decision is that the pre-emption analysis will turn on whether the plaintiff's claims arise out of an ERISA plan or an independent agreement, not whether the beneficiary actually is entitled to benefits under a plan.  In other words, even if Romine had not allowed her COBRA payments to lapse, the Seventh Circuit likely would have reached the same conclusion about pre-emption, simply based upon the nature of the claims asserted

The analysis for Mitchell-Hollingsworth's claim against BCBS-Alabama for breach of express contract is slightly different.   In its reply brief, Mitchell-Hollingsworth acknowledges that the breach of express contract claim "is different from the claims made against both defendants that arise from BCBSMI's misrepresentation.  Mitchell-Hollingsworth filed the breach of express contract claim against BCBSAL for withholding money BCBSAL owes Mitchell-Hollingsworth for care rendered to other insureds — not Ms. Beauchamp.  *That claim does not have a relationship to Ms. Beauchamp's plan.*"[44]   So characterized, the breach of express contract claim is an anomaly in Mitchell-Hollingsworth's complaint.  Who are these other insureds Mitchell-Hollingsworth is referencing?  Were they subject to ERISA plans?  What were the circumstances under which BCBS-Alabama refused to pay Mitchell-Hollingsworth for services rendered?   The complaint is devoid of any factual statements that might answer these questions.   In fact, the only factual statements in the complaint that even mention BCBS-Alabama relate to BCBS-Alabama's attempts to recover, on behalf of BCBS-Michigan, amounts paid to Mitchell-Hollingsworth for *Ms. Beauchamp's* care.  If the breach of express contract claim does not relate to Ms. Beauchamp, then the court struggles to understand how

---

in the plaintiffs' complaint.

[44] Doc. no. 20 (plaintiff's reply brief), at 9-10 (emphasis supplied).

there could be sufficient facts to support the claim in light of the standards for dismissal under Federal Rule of Civil Procedure 12(b)(6).  The same pleading deficiencies also make it impossible to determine whether the court has subject matter jurisdiction over the express contract claim.  There is no way to determine whether the claim should be subject to ERISA pre-emption because there is no way of knowing whether the unknown insureds referenced in the claim were even ERISA participants.  BCBS-Alabama, the removing defendant, has failed to satisfy its burden of establishing that federal jurisdiction exists over this claim.  *See, e.g.*, *Leonard*, 279 F.3d at 972.  Without more facts, the question of jurisdiction is uncertain, and that uncertainty must be resolved in favor of remand.  *See Russell Corp.,* 264 F.3d at 1050.

Even setting aside the problems of uncertainty in the pleading and BCBS-Alabama's failure to satisfy its burden of establishing federal jurisdiction, BCBS-Alabama's more substantive arguments in favor of federal jurisdiction also are not persuasive.  Despite BCBS-Alabama's suggestion, the mere mention of "covered services" in Mitchell-Hollingsworth's breach of express contract claim does not necessarily implicate ERISA. Mitchell-Hollingsworth alleged that "BCBSAL entered into contracts *with Mitchell-Hollingsworth* to compensate Mitchell-Hollingsworth *for*

*covered services* Mitchell-Hollingsworth rendered to BCBSAL's insureds,"[45] and that BCBS-Alabama breached those contracts by failing to compensate Mitchell-Hollingsworth for services it rendered to BCBS-Alabama's insureds.[46]   Despite the reference to services covered under the plan, it is clear that the breach of express contract claim is not based upon an ERISA beneficiary's plan, but on some independent agreement entered into *between Mitchell-Hollingsworth and BCBS-Alabama*.  The Seventh Circuit confronted a similar argument in *Franciscan Skemp*. It stated:

> Central States also makes much of the references in the complaint to the plan and the request that Central States pay "to the extent said services would otherwise have been covered."   These references, however, are solely for the purpose of identifying a damages amount; *they do not convert the claims into ones for plan benefits*.  Franciscan Skemp seeks damages, not wrongfully denied benefits.

*Franciscan Skemp,* 538 F.3d at 598 (emphasis supplied).  This court once again is persuaded by the Seventh Circuit's reasoning, and concludes that the mention of "covered services" in Mitchell-Hollingsworth's complaint does not convert its breach of contract claim into one for denial of plan benefits.

In summary, Michell-Hollingsworth has not asked this court to determine its "right to payment" under an ERISA benefits plan.   Therefore, Mitchell-

---

[45] Complaint ¶ 29 (emphasis supplied).

[46] *Id.* ¶¶ 30-32.

Hollingsworth's claims do not fall under the scope of ERISA, and the doctrine of complete pre-emption does not apply.

## V. CONCLUSION

Because plaintiff's state-law claims are not pre-empted by ERISA, and no other basis for federal subject matter jurisdiction has been asserted, plaintiff's motion to remand is due to be granted. As this court lacks subject matter jurisdiction over plaintiff's claims, BCBS-Michigan's motions to dismiss will be denied, but without prejudice to BCBS-Michigan's right to reassert them in a court with proper jurisdiction. An order consistent with this memorandum opinion will be entered contemporaneously herewith.

DONE this 17th day of January, 2013.

_____
United States District Judge